UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHLOÉ, ET AL.,

                              Plaintiffs,

          - against -

QUEEN BEE OF BEVERLY HILLS, LLC,
SIMONE UBALDELLI, ET AL.,

                              Defendants.

---

1:06-cv-03140-RJH-MHD

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, District Judge:

          This is a trademark infringement action against the operators of

QueenBeeBeverlyHills.com, a self-described "leading online retail discount designer

boutique, offering the latest trends in authentic European designer accessories."

          On August 1, 2008, the Court dismissed the case as to defendant Simone

Ubaldelli, a California resident.  *See Chloé v. Queen Bee of Beverly Hills, LLC*, 571 F.

Supp. 2d 518 (S.D.N.Y. 2008) ("*Chloé I*").  Ubaldelli used the Queen Bee site to sell a

counterfeit handbag to a paralegal employed by plaintiffs' counsel.  Other than that, he

had no contacts with New York.  *See id.* at 521-22.  The Court found that it could not,

based on this single sale, exercise specific personal jurisdiction over Ubaldelli.  *Id.* at

523-26.

          By letter dated February 19, 2009, plaintiffs moved the Court to certify

Ubaldelli's dismissal from the case as final.  *See* Fed. R. Civ. P. 54(b).  Plaintiffs point

out an apparent conflict of authority among the judges of this district over one of the

issues addressed in the Court's August 2008 decision—whether exercising jurisdiction

over a non-resident based on a single, internet-based sale of a counterfeit retail product is

consistent with due process. *Compare Chloé I*, 571 F. Supp. 2d 518, *with Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) (Kaplan, J.). In view of the tension in the caselaw and the importance of the question to trademark holders in this district, the Court finds it appropriate to add a few words to its prior discussion and grant the relief plaintiffs request.

## I.    *International Shoe* **and One-Off Internet Transactions**

There is no dispute about the governing law, at least at a very general level. Under *International Shoe Co. v. State of Washington Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945), a forum may exercise jurisdiction over a non-resident defendant who has "certain minimum contacts" with it if maintenance of a suit would not offend "traditional notions of fair play and substantial justice." *Id.* at 316. In the August 2008 opinion, the Court held that Ubaldelli's sale could not support jurisdiction under this standard. The handbag was purchased by plaintiffs' paralegal, so there was no possibillity of consumer confusion in New York. As a result, there was no connection between Ubaldelli's actions in New York and plaintiffs' cause of action. *Chloé I*, F. Supp. 2d at 525-26; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit, [due process] is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." (citations and footnotes omitted)); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997) (same). In addition, all of Ubaldelli's actions took place outside of New York. Thus,

exercising jurisdiction over Ubaldelli would be unreasonable and offend traditional notions of fair play and substantial justice. *Chloé I*, 571 F. Supp. 2d at 526.

This conclusion also follows from three Supreme Court decisions that addressed the circumstances in which a non-resident defendant's commercial dealings with a forum support personal jurisdiction.[1] The Court writes now to explain this additional basis for its decision.

In *Travelers Health Association v. Virginia*, 339 U.S. 643 (1950), the Supreme Court considered whether a Virginia regulatory commission could exercise jurisdiction over a Nebraska-based mail-order health insurance business. While the insurer had no offices or agents in Virginia, it developed what the Court termed "continuing relationships" with the state by soliciting business, accepting premium payments, and investigating claims there. *See id.* at 647-48. The Court reasoned that the insurer "did not engage in mere isolated or short-lived transactions," but subjected itself to "continuing obligations" to "each of the many certificate holders in the state." *Id.* at 648. Together with Virginia's important interests in enforcing its consumer protection laws, *see id.* at 648-49, these continuing obligations were enough to support jurisdiction over the non-resident insurer.

---

[1] A separate line of Supreme Court decisions considers the common fact pattern in which a defendant sells a product to a third party, the product finds its way into a forum, and the plaintiff attempts to assert jurisdiction over the defendant on the theory that it availed itself of the forum by placing its product into the "stream of commerce." *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). These decisions contain important and useful discussions of the *International Shoe* standard, but they are not directly relevant here. Ubaldelli purposefully sent a handbag to New York. The issue is whether this single, purposeful contact was sufficient to subject him to jurisdiction in a New York court.

In *McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957), the Court considered whether a "continuing relationship" sufficient to support jurisdiction could be based on an out-of-state insurer's relationship with a *single* insured in the forum state. The insured, a California resident, bought a life insurance policy from an Arizona-based insurer, which later assigned the policy to the defendant, a Texas corporation. *See id.* at 221-22. Aside from this single policy, the defendant had no connection to California. *Id.* at 222. The insured died, the insurer refused to pay, and the beneficiary obtained a default judgment against it in California. *See id.* at 224. Noting that the contract of insurance (a reinsurance certificate) was delivered in California, that premiums were paid there, and that the insured was a California resident when he died, *id.* at 223, the Court found that California properly exercised jurisdiction over the insurer, and that its judgment was entitled to full faith and credit. *Id.* at 224.

The Court's most recent discussion of when a defendant's commercial relationship with the forum supports jurisdiction came in *Burger King*, 471 U.S. 462. Defendant Rudzewicz and his partner, both Michigan residents, entered into a twenty-year franchise agreement with Burger King, a Florida corporation. *See id.* at 466-67. While certain aspects of the franchise relationship were handled by Burger King's local district office, the franchise agreement required Rudzewicz to pay fees to Burger King's Miami headquarters. *Id.* at 466. In addition, the agreement contemplated that Burger King's Miami headquarters would make important policy decisions affecting franchisees and work with them to resolve major problems. *Id.*

The Court held that Florida could exercise jurisdiction over Rudzewicz for an alleged breach of the agreement. The critical question, the Court explained, was not

whether "an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum," *id.* at 478 (emphasis in original), but whether the contract manifested an intent on the part of the out-of-state party to purposefully avail himself of the protections of the forum state so that he could reasonably anticipate being haled into court there:

> [W]e have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—*prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing*—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* at 479 (emphasis added and citations omitted). Because Rudzewicz voluntarily entered into a relationship that called for "long-term and exacting regulation of his business from Burger King's Miami headquarters," Florida's exercise of jurisdiction over him was proper. *Id.* at 480, 487.

In the Court's view, the Supreme Court's decisions in *Travelers*, *McGee*, and *Burger King* confirm that a single internet-based sale of a counterfeit retail product is insufficient to establish personal jurisdiction over an out-of-state defendant under *International Shoe.* By hypothesis, such a sale is a one-off transaction and cannot establish a "continuing relationship[]" with the buyer. *Travelers*, 339 U.S. at 647. Thus, the sale does not manifest meaningful "prior negotiations" and "contemplated future consequences," nor does it reflect a continuing course of conduct of a kind that the Supreme Court has found sufficient to support personal jurisdiction. Instead, the sale is at best the kind of "mere isolated or short-lived transaction[]" that *Travelers* and *Burger King* indicated is insufficient to support jurisdiction over a non-resident. *Cf. Travelers*,

339 U.S. at 648 ("The Association did not engage in mere isolated or short-lived transactions."); *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Under *Travelers*, *McGee*, and *Burger King*, the extent and nature of Ubaldelli's contacts with New York are insufficient to support jurisdiction.[2]

---

[2] As the Court's earlier opinion briefly noted, this conclusion also follows from analysis of whether maintaining suit here would offend "traditional notions of fair play and substantial justice." *Chloé I*, 571 F. Supp. 2d at 526. Where the question is whether a state court can exercise jurisdiction over a non-resident defendant, this analysis requires a court to weigh (1) "the burden on the defendant" of defending an action in the forum, (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477; *World-Wide Volkswagen*, 444 U.S. at 292.

Here the balance tips against jurisdiction. First, there is obvious inconvenience to a California resident in defending an action in the Southern District of New York. True, deregulation of the domestic airline industry has led to more competitive pricing, and domestic long-distance telecommunication costs are asymptotically approaching zero. But as any traveler who has spent time on the Los Angeles-New York redeye knows, doing business on both coasts is not cost-free. The trip itself takes five to six hours (without the almost inevitable delays), and there are obvious opportunity costs to being in New York if one lives and does business in California.

As for the second, fourth, and fifth factors, there is no obvious reason why New York has a greater interest in hearing trademark actions than other federal and state courts. The Lanham Act is the law of the land, and an action under the Act may be brought in virtually any U.S. court. These factors are thus essentially neutral.

The remaining factor—plaintiffs' interest in obtaining effective relief—does not tip the balance. Because the Lanham Act is national law, the choice is not between litigation in the forum state and nowhere as it was in *McGee*. *See* 355 U.S. at 223. Instead, trademark holders in the position of plaintiffs here must choose between bringing suit against an infringing defendant in the defendant's home state, and waiting until the defendant conducts sufficient business in the forum state to conclude that he has purposefully availed himself of the protections of the forum state. In the Court's view, putting plaintiffs to this choice is more consistent with traditional notions of fair play and substantial justice than hailing out-of-state defendants into New York court based on a single internet sale.

For these reasons, as well as those in the Court's August 2008 decision, the Court reaffirms its holding that it may not exercise jurisdiction over Ubaldelli based on his sale of a single handbag to plaintiffs' New York-based paralegal.

## II.    Decisions to the Contrary

At least two decisions by courts of this district appear to take an opposite view. First, in *Cartier*, 598 F. Supp. 2d 422, Judge Kaplan exercised jurisdiction over a Florida company that made a single sale to a New York resident and advertised its counterfeit products in Skymall, the airline magazine. While language in Judge Kaplan's opinion suggests that a single, internet-based sale of a counterfeit product supports specific personal jurisdiction over a non-resident defendant, the opinion in fact holds that such a sale supports jurisdiction if it is coupled with other activities directed at the forum state— the *Cartier* defendant distributed 150,000 catalogs to airlines for placement on flights originating from New York. *See id.* at 425. For this reason, Judge Kaplan's decision is best understood as a hybrid "stream of commerce"/"commercial relationship" case, and does not conflict with the Court's ruling here.

This does not hold true for Judge Sweet's decision in *Mattel, Inc. v. Adventure Apparel*, No. 00 CIV. 4085(RWS), 2001 WL 286728 (S.D.N.Y. Mar. 22, 2001). There, Judge Sweet exercised jurisdiction over an Arizona defendant who sold a single counterfeit product to an investigator in New York. While the bulk of Judge Sweet's opinion addressed New York's long arm statute, *see id.* at *3-4, the opinion held in passing that exercising jurisdiction over the defendant was also consistent with due process. Judge Sweet explained:

> [T]here were "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." In reaching this conclusion, the relevant factors have been considered, as well as Adventure's [defendant's] argument that Mattel's [plaintiff's] trickery renders the exercise of personal jurisdiction by this Court violative of due process.

*Id.* at *4 (citations omitted).

The Court does not find this analysis persuasive, although it agrees that the kind of "trickery" alleged here is no bar to the exercise of long-arm jurisdiction. *See infra* p. 10. The quoted passage does not consider the distinction, prominent in *Travelers*, *McGee*, and *Burger King*, between isolated business contacts with a forum and contacts that demonstrate purposeful availment of the forum's laws and institutions. Nor does it consider the mountain of contrary authority cited in the Court's prior opinion. *See Chloé I*, 571 F. Supp. 2d at 524-25. Accordingly, the Court respectfully declines to follow *Mattel*.

## III.    Three More Objections

Three additional objections merit brief discussion. First, it might be objected that the line the Court adopts here, that a single, internet-based sale of a counterfeit product does not support jurisdiction while more substantial contacts do, is hopelessly inadministrable. Wouldn't a simpler rule—e.g., one holding that an internet seller is subject to jurisdiction anywhere he delivers a product—be preferable, if only to avoid the social cost of repeated litigation over whether "the quality and nature of the defendant's activity" support jurisdiction? *Burger King*, 471 U.S. at 475. *Cf.* Cass R. Sunstein, *Rules and Rulelessness* 19-23 (Univ. of Chicago, John M. Olin Law & Econ. Working Paper No. 27 (2d series)), *available at* http://www.law.uchicago.edu/Lawecon/WkngPprs_26-50/27.CRS.Rules.pdf; Antonin Scalia: *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1182-83 (1989).

The point is not without force, but it is a criticism of *International Shoe*, not its application in this particular context. *E.g.*, Robert C. Casad, *Personal Jurisdiction in Federal Question Cases*, 70 Tex. L. Rev. 1589, 1593 (1992) ("The application of [the *International Shoe*] test is attended by much uncertainty. Different courts weigh the various factors differently, and often reach opposite results on very similar facts."). *International Shoe* "is not susceptible of mechanical application," and "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 92 (1978). *See Burger King*, 471 U.S. at 478-79. Whatever practical advantages there might be to a single-sale rule, such a rule simply cannot be squared with the fact- and context-intensive inquiry *International Shoe* calls for.

It might also be objected that requiring something more than a single retail transaction creates a gap between the scope of conduct regulated by substantive law and the federal courts' regulatory power. It is only natural that a defendant who takes advantage of the national market should be subject to regulation throughout that market. *Cf. Cartier*, 598 F. Supp. 2d at 425. By declining to exercise jurisdiction based on an isolated transaction, courts allow defendants to operate in distant markets without, as it were, paying the jurisdictional price.[3] The argument, however, relies on a false premise.

---

[3] A similar argument was advanced by Justice Brennan but never adopted by the Court as a whole. *See Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in the judgment) ("A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.").

As noted above, *see supra* n.2, the Lanham Act is the law of the land.  Thus, plaintiffs always will have *some* forum in which to enforce their rights.

Lastly, it might be objected that the Court's holding rests on equitable considerations that are irrelevant to the *International Shoe* analysis, particularly on the view that there is something tricky or deceitful to obtaining jurisdiction over an out-of-state defendant by purchasing goods from him through a website.  The Court rejects this argument.  While the Court does hold that there is no connection between plaintiffs' cause of action and defendants' activities in New York, *Chloé I*,  F. Supp. 2d at 525-26, it does not believe plaintiffs engaged in any wrongful act that goes to the Court's jurisdiction over Ubaldelli.  Courts will not exercise jurisdiction obtained by fraud.  Restatement (Second) of Conflict of Laws§82 (1971); *see Burnham*, 495 U.S. at 613.  But no such fraud occurs without a misrepresentation, express or implied, regarding some aspect of the transaction.  *Jaster v. Currie*, 198 U.S. 144, 147 (1905) (Holmes, J.).  There is no suggestion that anything of this sort happened here.  Instead, the Court simply finds that Ubaldelli's contacts with New York are not enough to support jurisdiction under *International Shoe*.

* * *

The Clerk is directed to enter final judgment as to defendant Simone Ubaldelli. The Court certifies, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay.

SO ORDERED.

Dated: New York, New York
      June **29** , 2009

                                       Richard J. Holwell
                             United States District Judge